UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANDREW TRUBIN,                                    :

               Petitioner,              :   \_\_\_\_\_04 Civ. 6156 (LAP) (GWG)

   -v.-                                          :   **REPORT AND**
                                            **RECOMMENDATION**
WILLIAM P. MAZZUCA, Warden Fishkill          :
Correctional Facility,
                                               :

               Respondent.
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Andrew Trubin, proceeding <u>pro se</u>, brings this petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 challenging his April 18, 2001 conviction in the Supreme Court of

the State of New York, New York County, for Burglary in the Third Degree (New York Penal

Law ("N.Y.P.L.") § 140.20).  Trubin was sentenced to an indeterminate term of 3-1/2 to 7 years'

imprisonment.  Trubin is currently incarcerated at Fishkill Correctional Facility.  For the reasons

stated below, the petition should be denied.

I.  <u>INTRODUCTION</u>

    A.  <u>Evidence at Trial</u>

The evidence offered at trial is of only limited relevance to this petition.  In brief, on

April 7, 2000, Jeffrey Frisch and a colleague were meeting in a conference room adjacent to

Frisch's office at a public accounting firm.  (Tr. 368-69).[1]  Frisch had previously left the door to

his office completely open, as he normally did.  (Tr. 370).  At about 1:00 p.m., Frisch emerged

from the conference room and found the door to his office half closed.  (Tr. 369-70).  Frisch

---

      [1]"Tr." refers to the trial transcript, which is reproduced along with the sentencing
transcript (referred to as "S.") in a single volume filed as Docket #12.

looked behind the door and saw Trubin in his office.  (Tr. 370-71).

When Frisch asked Trubin what he was doing there, Trubin replied, "Sorry.  I was trying to find my way out of the building."  (Tr. 370).  Nothing in Frisch's office looked like an exit, however.  (Tr. 381).  As he stepped back to allow Trubin to pass by, Frisch saw his wallet drop to the floor.  (Tr. 371).  He did not see where the wallet dropped from (Tr. 371), and he never saw Trubin holding the wallet (Tr. 395-96).  The wallet contained Frisch's credit cards but no money because he kept his money in his pocket.  (Tr. 383, 391, 403-04).  The wallet had been in the inside pocket of Frisch's coat, which was hanging on a hanger on a hook behind the door.  (Tr. 382, 394).

After seeing his wallet drop to the floor, Frisch checked the wallet, verified that nothing was missing from it, and then began yelling and cursing at Trubin.  (Tr. 371, 410-11).  When Trubin attempted to go to the elevator bank, Frisch followed him to the elevators and sought an explanation for his presence.  (Tr. 371).  Some co-workers heard the commotion and joined Frisch and Trubin at the elevator banks.  (Tr. 373).  Trubin told them that he had an interview on another floor at the offices of Scientific American with "Bill Gates," which he later changed to "Bill Gaines."  (Tr. 374-75).  Several individuals from the building management arrived and asked Trubin and Frisch to "go downstairs and talk this over and see what happened."  (Tr. 376).  In the building manager's office, Trubin again claimed that he was interviewing with Scientific American, but at that point changed the name of his interviewer to "Bill Burke."  (Tr. 376).  Trubin did not have any resumes with him and was not able to offer any documents to explain why he was in the building.  (Tr. 376-77).  Trubin was arrested shortly thereafter.  (Tr. 378).

B.  Trubin's Absence from the Courtroom

During voir dire, while planning the trial schedule, the trial judge asked whether "production on Friday [is] an issue here?"  (Tr. 114).  Trubin's counsel responded affirmatively.  (Tr. 114).  The judge then inquired whether it had "the consent of both sides to have [the jury] not deliberate on Friday because [Trubin] doesn't want to be here for religious reasons."  (Tr. 115).  Defense counsel did not consent at that time, preferring, instead, to "wait and see . . . if it makes sense to have the jury begin deliberations on Thursday."  (Tr. 115).  The judge then stated that he might "want the jury to come [in] on Friday and deliberate and he'll have the option of coming in or not.  But if he voluntarily absent himself [sic] we'll have the jury deliberate without him. . . .  Is that what he wants to do?"  (Tr. 115-16).  Trubin's counsel stated that he would "rather wait until we get further along."  (Tr. 116).

After both sides rested on Thursday, February 1, 2001, the following colloquy occurred:

THE COURT:     By the way, with regard to the religious ceremonies for tomorrow [Friday], he's still at the Manhattan House, right?

COUNSEL:       Yes he is.

THE COURT:     Okay, I called the captain over there and the ceremonies are around one o'clock, so they can bring you in the morning.

               As long as I send you back by noon you can attend services.  And when it's done at two, you can come on back, we'll send you back.

               We might have to take a long lunch break so you can attend the services, but you will be able to attend the service without a problem.

COUNSEL:       Okay.

(Tr. 496-97).  Thereafter, the parties delivered closing statements, then the judge instructed the

jury on the law, and the jury began deliberating. At one point, the jury issued a note asking to "separate for the evening" because they were "unable to reach a verdict" at that time. (Tr. 601-02).

Just before the jury was summoned, defense counsel informed the judge that "my client does not want to come back tomorrow. I understand you made arrangements but [it's] very difficult." (Tr. 602). The following exchange then occurred:

THE COURT: I made arrangements with the captain of the building so you could be produced here in the morning, participate in the proceedings and we'll suspend around noon until two or so, so you can fully participate in all religious services without any interference of your religious obligations, then reconvene after the service is over.

So, if you don't want to come tomorrow morning, it should be clear that you are waiving your right to be present here voluntarily. It's not because of a religious conflict because there is no conflict.

I'm suspending operation during the times necessary to deliver you to fully participate in all the religious observations you want to participate in.

If you don't come tomorrow morning it's because you don't want to be here, and you are giving up your right to be present but it has nothing to do with an exercise of religion.

Is that what you want to do?

THE DEFENDANT: If that's how you put it. If you're telling me I have to go back there, go back to service – I'm literally sweating like a pig. I have to go back and take a shower. I can't do nothing, to run there, go to service like that. It's totally unfair. As when we started the proceedings, the arrangements and agreements that we made were that Friday I would not have to come to court and that you would put it over. You would put it over.

4

(Tr. 602-04).  The judge stated that he had made no such agreement and warned Trubin of the consequences of waiving his right to be present:

THE COURT:      . . . if you don't appear here in the morning, we'll go forward.  There will be notes from the jury.  I'll bring them out.  We'll discuss them with your attorney.  There may be readback on testimony.  There might be questions about the law.

When all that occurs you have an absolute right to be present and you will be present if you want to.

But you can waive that and not be present if you don't want to.  We will not conduct any proceedings during the two-hour period from twelve to two when you would want to participate in the religious observance.  But if you are not here between nine and twelve, it's just because you don't want to be here while these proceedings go forward.  From two to five, six or seven, however long we go tomorrow evening, that's your choice.  We'll go forward tomorrow.  It's not a matter of religious compulsion.

(Tr. 604-05).

At approximately 9:45 the next morning, Friday, February 2, 2001, a Department of Correction officer informed the judge that Trubin would not be attending court.  (Tr. 612).  At 11:00 a.m., the jury sent out a note requesting, among other things, a readback of testimony and a clarification of the definition of intent.  (Tr. 612-13).  At about 11:40 a.m., while the attorneys were going through the transcript to prepare a response to the note, the jury sent out a new note indicating that it had reached a verdict.  (Tr. 613).  The judge then telephoned the Department of Correction and asked whether Trubin wanted to be present for the reading of the verdict.  The trial judge reported that a captain informed him that Trubin again declined to be present.  (Tr. 614-15).  However, Trubin's attorney asserted that Trubin had told her a day earlier that he did want to be present.  (Tr. 615).

The judge denied defense counsel's request to ask the jury, before accepting the verdict, "if they still needed the answer to the question of clarification of intent and about whether [Trubin] needed to have the intent to commit a crime before he entered that office." (Tr. 613). The judge did, however, state to the jury that he could have responded to the earlier note "relatively soon" but that "you went on and reached a verdict, which is fine, it's your prerogative." (Tr. 617). The judge then stated:

> But after you announce your verdict, if either side asks that I poll the jury, what that means is that we'll ask you, do you agree with the verdict? And if you say yes, when you say you agree with the verdict, it means not only do you agree with the verdict that's announced by the foreperson, but it also means that you agree that what you wanted to do was go forward with the verdict, and you didn't want to wait for the rest of your request to be responded to.
>
> And as long as that's what you all agree to, that's fine. I just want to make sure that's what you all agree to, okay.

(Tr. 617). The foreperson then announced that the jury had found Trubin guilty of Robbery in the Third Degree. (Tr. 618). At defendant's request the jury was polled, and all the jurors responded "yes" to the question of whether that was their verdict. (Tr. 618-20).

B. <u>Motion to Set Aside the Verdict, Sentencing, and Direct Appeal</u>

Sometime after the jury rendered its verdict, Trubin moved to set aside the verdict and for an order granting a new trial pursuant to New York Crim. Proc. Law ("CPL") §§ 330.30, 330.50, on the ground that the trial court erroneously accepted the jury's verdict without conducting, "at least, a minimal inquiry" as to whether its "verdict relied upon a proper definition of intent as well as the appropriate moment of its formation." Notice of Motion to Set Aside Verdict CPL § 330.30 (1) (reproduced as Ex. A in Declaration in Opposition to Petition for a Writ of Habeas Corpus, filed Feb. 9, 2005 (Docket #11) ("Opp. Decl.")). The court orally denied Trubin's

motion on April 18, 2001, just prior to sentencing, reasoning that the delay in responding to the jury's note was due to counsel "going through the minutes as diligently as they could in trying to satisfy the request" and that it was "not an undue or unnecessary delay." (S. 3). The court further explained that the jurors had "each individually and unanimously and collectively together announced by their responses to the polling that they agreed with the verdict and they didn't want a readback. Therefore, there was no reason to set aside the verdict." (S. 4).

On April 18, 2001, Trubin was sentenced as a predicate felony-offender to an indeterminate term of three-and-one-half to seven years' imprisonment. (S. 7, 13-14).

Trubin appealed his conviction to the Appellate Division, First Department, arguing that: (1) by accepting the jury's verdict in Trubin's absence due to religious observance, the trial court violated Trubin's right to be present at trial and his right to the free exercise of religion; and (2) by failing to inquire whether the jury wanted a response to its note before accepting the verdict, the trial court violated Trubin's due process right to a fair trial and Trubin's motion to set aside the verdict should have been granted. See Brief for Defendant-Appellant, dated July 2002 (reproduced as Ex. C to Opp. Decl.) ("Def. App. Br."), at 14, 21.

On April 1, 2003, the Appellate Division affirmed Trubin's conviction. People v. Trubin, 304 A.D.2d 312, 312 (1st Dep't 2003). The court held that he "was not deprived of his right to be present at the jury's rendition of a verdict, and was not compelled to choose between his right to be present and his right to freely exercise his religion" since the court provided reasonable accommodations for Trubin to exercise his religion "by arranging for him to attend Friday prayer services at the adjacent correctional facility at 1:00 P.M." Id. The Appellate Division further noted that "[g]iven the court's warnings and [Trubin's] comments at that time," Trubin clearly

waived his right to be present.  Id. at 312.  The court similarly rejected Trubin's remaining claim

that he was denied his right to a fair trial when the court accepted the jury's verdict without

responding to its previous note:

> Prior to accepting the verdict, the court instructed the jurors that should they be
> polled, their affirmation of the validity of the verdict would mean that they were
> confirming that they did not need any additional instructions.  Accordingly, when
> the jury was polled and remained unanimous in finding defendant guilty, it
> thereby indicated that it no longer needed further instructions, and defendant
> could not have been "seriously prejudice[d]" by the lack of a response to the note.

Id. at 313.

By letter dated April 11, 2003, Trubin sought leave to appeal to the Court of Appeals.

See Letter from Beth S. Lyons to Hon. Judith Kaye, dated Apr. 11, 2003 (reproduced as Ex. F to

Opp. Decl.).  On July 7, 2003, the Court of Appeals denied Trubin leave to appeal.  People v.

Trubin, 100 N.Y.2d 588, 588 (2003).

C.  The Original Petition for Habeas Corpus

Trubin timely filed his petition for writ of habeas corpus on August 9, 2004.  See Petition

Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed Aug. 9,

2004 (Docket #2) ("Petition").  He filed a supporting memorandum thereafter.  See

Memorandum of Law, filed Sept. 2, 2004 (Docket #4) ("Pet. Mem.").  The petition contends that

he is entitled to relief because: (1) the verdict was improperly accepted in Trubin's absence in

violation of the First and Sixth Amendments, the policy of the New York City Department of

Correction, and "County Courts['] [policy] where [i]nmates of the Islamic faith" are not required

to attend court on Fridays; (2) Trubin did not waive his right to be present since he was never

asked whether he wanted to attend court on Friday, there is "no record of anyone informing

[Trubin] of [the] verdict being reached," and he specifically informed his counsel that he wanted

8

to be present; (3) the verdict was not "predicated upon each and every element of [the] charged crimes" since the jury was not appropriately instructed on the intent element; and (4) the jury "based its verdict upon evidence inadmissibly admitted into [trial], [and] perjured testimony," in violation of the Fourteenth Amendment.  See Petition ¶ 13; Def. App. Br. at 14, 21.  On February 9, 2005, respondent filed its opposition papers.  See Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, filed Feb. 9, 2005 (Docket #10) ("Resp. Mem."); Opp. Decl.

      D.  <u>Subsequent State Proceedings</u>

On March 7, 2005, this Court permitted Trubin to submit an amended petition to add claims relating to alleged "perjury by the District Attorney and Police Officers," and, with respondent's consent, stayed the proceedings to allow Trubin to raise these claims in state court. See Order, filed Mar. 7, 2005 (Docket #14); Letter from Danielle L. Attias, dated Mar. 1, 2005. Thereafter Trubin filed a CPL § 440.10 motion in the Supreme Court of New York, New York County, in which he contended that the prosecutor presented perjured testimony and violated <u>People v. Rosario</u>, 9 N.Y.2d 286 (1961) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and that Trubin's trial counsel was ineffective.  See Notice of Motion to Vacate Judgment, dated Apr. 13, 2005 (reproduced as Ex. A to Letter from Luke Martland to Hon. Gabriel W. Gorenstein, dated Nov. 8, 2005 (Docket #17) ("Resp. Supp. Let.")).  On April 29, 2005, the court denied Trubin's motion, holding that the "matters asserted were part of the trial record which could be adequately reviewed on appeal."  See Motion For: CPL § 440.10, dated Apr. 29, 2005 (reproduced as Ex. D to Resp. Supp. Let.).  On May 27, 2005, Trubin sought leave to appeal the denial of his CPL § 440.10 motion to the Appellate Division, First Department.  See Letter from Andrew Trubin to

Clerk, Supreme Court Criminal Appeals Bureau, dated May 27, 2005 (reproduced as Ex. E to Resp. Supp. Let.). On July 28, 2005, the Appellate Division denied Trubin's request for leave to appeal in an unpublished opinion. See People v. Trubin, 2005 N.Y. App. Div. LEXIS 8202 (1st Dep't July 28, 2005).

In April 2005, Trubin filed a motion for a writ of error coram nobis with the Appellate Division. See Notice of Motion, dated Apr. 11, 2005 (reproduced in Ex. H to Resp. Supp. Let.) ("Coram Nobis Mot."). He argued that his appellate counsel was ineffective for failing to raise the claim that the prosecutor presented perjured evidence. See Petition for Writ of Error Coram Nobis, dated Apr. 7, 2005 (reproduced in Ex. H to Resp. Supp. Let.) ("Coram Nobis Mem."), at 3. Trubin claimed that when he asked his appellate counsel to raise the issue, she declined to do so. Id. at 4. The Appellate Division denied Trubin's motion. See People v. Trubin, 2005 N.Y. App. Div. LEXIS 8043 (1st Dep't July 21, 2005).

E.   The Amended Petition

On December 16, 2005, Trubin filed an amended petition with this Court. See Amended Petition, filed Dec. 16, 2005 (Docket #18) ("Am. Petition"). In the amended petition, he raises the same claims that he raised in his original petition as well as the following additional claims: (1) Trubin's trial counsel was ineffective because she was assigned to Trubin's case two weeks before the trial and thus was unable to adequately respond to the introduction of alleged perjury; and (2) Trubin's appellate counsel was ineffective for not raising the perjury claim on direct appeal. Id. at 3.[2] Respondent filed opposition papers. See Resp. Supp. Let.; Respondent's

_____

[2]The amended petition attaches an addendum that lists all the claims he raises. The addendum, titled "Addition to Page #2," is annexed as the third page of the amended petition. For ease of reference, we have added page numbers to all the pages of the amended petition,

Supplemental Memorandum of Law in Opposition to the Amended Petition for a Writ of Habeas Corpus, filed Feb. 7, 2006 (Docket #20) ("Resp. Supp. Mem.").  Trubin filed a reply.  See Untitled Document, filed Apr. 3, 2006 (Docket #21).

II.  APPLICABLE LEGAL PRINCIPLES

A.  Law Governing Petitions for Habeas Corpus Under 28 U.S.C. § 2254

Under 28 U.S.C. § 2254, a petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims . . . with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (internal quotation marks and citations omitted).  As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited.  See Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) (internal quotation marks omitted); accord Rosa v. McCray, 396 F.3d 210, 220 (2d Cir. 2005) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court

_____

including the addendum.

11

has alluded to federal law in its decision.").

In Williams v. Taylor, the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405-06 (2000). Williams also held that habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been "objectively unreasonable." Id. at 409; accord Rompilla v. Beard, 125 S. Ct. 2456, 2462 (2005) ("the state court decision must have been not only incorrect or erroneous but objectively unreasonable") (citations and internal punctuation omitted).

In addition, under 28 U.S.C. § 2254(a), federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). To be entitled to habeas relief, a petitioner must demonstrate that the conviction resulted from a state court decision that violated federal law. See, e.g., id. at 68.

B. <u>Exhaustion</u>

Before a federal court may consider the merits of a habeas claim, a petitioner is first required to exhaust his available state court remedies.  See 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."); accord Daye v. Attorney Gen., 696 F.2d 186, 190-91 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).  To exhaust a habeas claim, a petitioner is required to have presented the federal claim to all levels of the state appellate courts.  See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Picard v. Connor, 404 U.S. 270, 275-76 (1971); Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991); Daye, 696 F.2d at 191.  In New York, this means the defendant must first appeal his or her conviction to the Appellate Division and then seek a certificate granting leave to appeal from the Court of Appeals.  See, e.g., Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005).

C. <u>Procedural Default</u>

        When a state court rejects a petitioner's claim because the petitioner failed to comply with a state procedural rule, the procedural default normally constitutes an adequate and independent ground for the state court decision.  See, e.g., Lambrix v. Singletary, 520 U.S. 518, 522-23 (1997); Coleman v. Thompson, 501 U.S. 722, 729-30, 749-50 (1991).  A "procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'"  Harris v. Reed, 489 U.S. 255, 262 (1989) (citations omitted); accord Coleman, 501 U.S. at 749-50; Fama v. Comm'r of

13

Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000); Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995); see also Harris, 489 U.S. at 264 n.10 ("[A]s long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent state ground doctrine "curtails reconsideration of the federal issue on federal habeas.").

## III. DISCUSSION

### A. Claims Regarding Trubin's Absence from the Courtroom

Trubin claims that the trial court violated his First Amendment right to the free exercise of religion and his Sixth Amendment right to be present at his trial when it refused to adjourn jury deliberations on a Friday, thus forcing him as a Muslim to choose between attending religious services and being present at his trial. See Am. Petition at 3; Def. App. Br. at 14-21.[3] The Appellate Division decided this claim as follows:

> Defendant was not deprived of his right to be present at the jury's rendition of a verdict, and was not compelled to choose between his right to be present and his right to freely exercise his religion. Defendant informed the court that he would not appear in court the next day, a Friday, during which the jury would be continuing its deliberations. The court reasonably accommodated defendant's religious preferences by arranging for him to attend Friday prayer services at the adjacent correctional facility at 1:00 P.M., and warned him that his failure to appear in court in the morning before the religious service and in the afternoon following the service would be deemed a waiver of his right to be present. Given the court's warnings and defendant's comments at that time, the communication received by the court on Friday from the Department of Correction clearly established that defendant had refused to be produced and had thus voluntarily

---

[3]Respondent alleges that Trubin has not exhausted his claim to the extent that he is arguing that "the trial court accepted the verdict in violation of the Department of Corrections' policy . . . where inmates of the Islamic faith are not required to attend court on Fridays." See Resp. Mem. at 9 (internal bracketing and quotation marks omitted). Because any such claim relies exclusively on a right purportedly arising under state law, it is not subject to habeas review. Estelle, 502 U.S. at 67-68.

> waived his right to be present. Accordingly, the court was not obligated to ascertain once again from defendant whether he wished to be present for the verdict, and it properly accepted the verdict in defendant's absence.

Trubin, 304 A.D.2d at 312-13 (citations omitted). Because this determination was "on the

merits," it is afforded the deferential standard of review discussed in section II.A. above.

In his petition, Trubin asserts that his claim arises under both the Free Exercise Clause of

the First Amendment and his Sixth Amendment right to be present at trial. See Am. Petition at

3; Def. App. Br. at 14. As discussed in detail in Hoyt v. Lewin, 2006 WL 1305098, at *12-*13

(S.D.N.Y. May 12, 2006), a claim such as Trubin's is best analyzed as a determination of

whether the defendant made a voluntary choice not to be present at trial. Under Sixth

Amendment case law, a defendant may waive his right to be present at trial provided the waiver

is knowing and voluntary. See, e.g., Diaz v. United States, 223 U.S. 442, 456-58 (1912); United

States v. Sanchez, 790 F.2d 245, 248-49 (2d Cir.), cert. denied, 479 U.S. 989 (1986). Hoyt

examined whether a trial court's ruling to proceed with trial on a day the defendant wished to

attend religious services improperly coerced the defendant into not attending his trial such that

the failure to attend was not truly "voluntary." 2006 WL 1305098, at *13; see also People v.

Gilliam, 215 A.D.2d 401, 402 (2d Dep't 1995) (reversing conviction where "the trial court

impermissibly forced the defendant to choose between his First Amendment right to the free

exercise of his religion and his right to be present at the voir dire"). As was stated in Hoyt:

> the issue of the voluntariness of a defendant's decision to absent himself from court proceedings due to religious observance must be tied to the question of whether the First Amendment requires a trial judge to accede to the defendant's desire to engage in the particular exercise of his religion. To frame the issue in terms of the Sixth Amendment's "voluntariness" requirement: if a criminal defendant had a First Amendment right to be excused from attending trial on a particular day, a judge's insistence on convening trial on that day would amount

to the sort of "coercion" that would render involuntary the defendant's otherwise intentional decision to absent himself.

2006 WL 1305098, at *14.

Under the Free Exercise Clause, "[n]ot all burdens on religion are unconstitutional. . . . The state may justify a limitation on religious liberty by showing that it is essential to accomplish an overriding governmental interest." Bob Jones University v. United States, 461 U.S. 574, 603 (1983) (citations omitted) (bracketing in original). The governmental interest must be "compelling" and there must be no "less restrictive means . . . available to achieve" it. Id. at 604 (citations and internal quotation marks omitted). In Trubin's case, however, there was no burden placed on his exercise of religion because Trubin was never forced to choose between attending his trial or attending religious services. Rather, the trial judge allowed him to do both. Specifically, the trial judge "made arrangements . . . so [Trubin] could be produced . . . in the morning, participate in the proceedings and [deliberations would] suspend around noon until two or so, so [Trubin could] fully participate in all religious services without any interference of [his] religious obligations." (Tr. 602). Because Trubin chose not to take advantage of this arrangement, his decision not to appear at trial was "voluntary" and no Sixth Amendment right was implicated. Trubin's statement that he objected to the arrangement because he would be "sweating like a pig" (Tr. 603) does not reflect a burden on his right to his free exercise of religion sufficient to outweigh the compelling government interest of "maintaining the integrity of the jury's deliberations." See Morgan v. Walsh, 2002 U.S. Dist. LEXIS 26734 (S.D.N.Y. Nov. 27, 2002), at *27 n.9, adopted by, 2003 U.S. Dist. LEXIS 14813 (S.D.N.Y. Aug. 27, 2003);

see also Hoyt, 2006 WL 1305098, at *16 ("There is a compelling government interest in declining to interrupt jury deliberations, particularly given the approach of a weekend.").[4]

B. The Adequacy of the Jury's Verdict

Trubin claims that the "trial court improperly failed to respond to a note from the jury, which requested clarification of the element of intent," Am. Petition at 3, and consequently, that the court violated Trubin's "due process right to a fair trial," Def. App. Br. at 21. Trubin first presented this claim in a motion to set aside the verdict under CPL § 330.30, and the trial court denied the motion. See S. 3. Trubin raised the claim on direct appeal before the Appellate Division, which also rejected the claim, holding that his right to a fair trial had not been violated:

> Prior to accepting the verdict, the court instructed the jurors that should they be polled, their affirmation of the validity of the verdict would mean that they were confirming that they did not need any additional instructions. Accordingly, when the jury was polled and remained unanimous in finding defendant guilty, it thereby indicated that it no longer needed further instructions, and defendant could not have been "seriously prejudice[d]" by the lack of a response to the note.

Trubin, 304 A.D.2d at 313. Because his claim was adjudicated on the merits, the state court's decision is entitled to the deferential standard of review discussed in section II.A. above.

Generally, questions concerning jury instructions are matters of state law and are not cognizable on federal habeas corpus review. See Cupp v. Naughten, 414 U.S. 141, 146 (1973); Gilmore v. Taylor, 508 U.S. 333, 344 (1993); United States ex rel. Smith v. Montanye, 505 F.2d 1355, 1359 (2d Cir. 1974), cert. denied, 423 U.S. 856 (1975); Herrara v. Lacy, 1995 WL 669675,

---

[4]Trubin also argues that he in fact wished to attend the trial once a verdict was reached – despite his previously-stated desire to attend religious services – and that the Department of Corrections failed to communicate this when the trial judge called to inquire. See Def. App. Br. at 14, 21. Given that Trubin had declined to attend the trial on Friday at all – a day on which it was obviously possible if not probable that a verdict would be reached – the trial judge was not required to determine whether Trubin had changed his mind.

at *8 (E.D.N.Y. Nov. 5, 1995); <u>Bacchi v. Senkowski</u>, 884 F. Supp. 724, 732 (E.D.N.Y. 1995) (not even "universally condemned" instructions justify habeas relief without a violation of some right guaranteed by the Fourteenth Amendment). An error relating to a jury instruction presents grounds for federal habeas relief only if it "so infected the entire trial that the resulting conviction violates due process." <u>Estelle</u>, 502 U.S. at 72 (quoting <u>Cupp</u>, 414 U.S. at 147); <u>accord</u> <u>Grey v. Henderson</u>, 788 F. Supp. 683, 693 (E.D.N.Y. 1991). In deciding whether a jury instruction violates due process, the court on habeas review must evaluate the instruction not in "artificial isolation," but in the context of the overall charge and trial record. <u>Estelle</u>, 502 U.S. at 72. "Once the judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion." <u>Ortiz v. Artuz</u>, 113 F. Supp. 2d 327, 339 (E.D.N.Y. 2000).

In this case, the trial judge repeatedly instructed the jury that for Trubin to be guilty of third degree burglary, he had to have knowingly and unlawfully entered the building with an "intent" to commit a crime. (Tr. 586-89). The judge stated that "a person has the intent to commit a crime in a building when that person's conscious objective or purpose is to commit a crime in that building." (Tr. 587-88). When the jury asked during its deliberations to have the elements of burglary reread, the court reiterated this definition of intent. (Tr. 598-601). Trubin does not claim that any aspect of the jury instructions on intent was incorrect, but rather that the trial court should have responded to the jury's request before accepting the verdict.

In fact, the trial judge did respond to the request when he told the jury that, were they to be polled, their statement that they agreed with the verdict would also mean "that you agree that what you wanted to do was go forward with the verdict, and you didn't want to wait for the rest of your request to be responded to." (Tr. 617). Any uncertainty about whether the jury needed

further instructions or harbored any confusion regarding the intent element was settled by the jurors' unanimous, affirmative responses to the polling questions.  See Tr. 618-20.  In essence, the jury made clear that it was no longer seeking any further instruction on the issue of intent and thus that its original note was no longer operative.  For this reason, the trial judge committed no constitutional error.  See, e.g., Matos v. Senkowski, 1990 WL 17680, at *5-*6 (S.D.N.Y. Feb. 20, 1990) (no violation of petitioner's due process rights where trial court confirmed with jury that it did not need a response to an earlier request before delivering its verdict).

In any event, even if we could characterize as error the trial court's decision not to give a further instruction on the intent element, no habeas relief would be warranted.  The jury had been instructed on intent on two occasions and there was nothing unclear or improper about those discussions.  Thus the failure to give yet another instruction did not "infect[] the entire trial" or undermine the integrity of Trubin's conviction.  Estelle, 502 U.S. at 72; see also United States v. Young, 140 F.3d 453, 457 (2d Cir. 1998) (no "plain error" where court accepted a jury verdict returned one hour after the jury's request to have part of the charge read back, where the court had not responded to or inquired concerning the jury's request); Gillespie v. Miller, 2004 WL 1689735, at *18 (S.D.N.Y. July 29, 2004) (finding no ineffective assistance where petitioner's appellate counsel decided not to raise a "meritless" claim regarding the trial court's acceptance of a verdict before responding to two jury notes asking for clarification of the law).

C.  Claims Relating to the Alleged Perjury

In addition to the two claims addressed above, Trubin raises three recently exhausted claims in his amended petition: (1) that perjured testimony relating to Trubin's waiver of his Miranda rights was admitted into evidence at his trial; (2) that his trial counsel was ineffective

because she was assigned to the case two weeks before trial and thus was unable to respond to the introduction of the alleged perjured evidence; and (3) that his appellate counsel was ineffective for not raising the perjury claim on direct appeal. See Am. Petition at 3.

### 1. The Alleged Perjured Testimony

When Trubin was arrested on April 7, 2000, he gave Detective Noak a written statement in which he made a number of admissions regarding his presence in the victim's office. See Tr. 460-63. As a part of the interrogation process, the detective read the Miranda warnings to Trubin and had him place his initials on a Miranda warnings card indicating that he understood each right that he was waiving. See Tr. 453-57; Am. Petition, Ex. D; Resp. Supp. Let., Ex. A. Although Trubin's written statement that is annexed to the card is dated April 7, 2000, the Miranda card is dated "7/7/2000." Id. At Trubin's trial, Detective Noak initially testified that Trubin received his Miranda warnings on July 7, 2000. (Tr. 454). Then the prosecutor asked, "Is the date actually April 7th on that, detective?" The detective responded, "Yes, I'm sorry, yes." (Tr. 454). Trubin claims that the prosecutor introduced perjured testimony and a "fraudulent" document into evidence. Respondent argues that this claim is procedurally barred from habeas review. See Resp. Supp. Mem. at 6-7. There is no need to reach the issue of whether the perjury claim is procedurally barred because we would deny habeas relief on this claim even on the merits.[5]

---

[5]While at one time the Second Circuit suggested that avoiding a procedural question to reach the merits of a habeas petition was justified only in "rare situations," Dunham v. Travis, 313 F.3d 724, 729-30 (2d Cir. 2002), more recently it has treated avoidance of the procedural bar as an acceptable practice whenever the habeas claim may be denied on the merits, see, e.g., Greiner v. Wells, 417 F.3d 305, 317 n.14 (2d Cir. 2005).

To challenge a conviction based on the prosecutor's use of allegedly false testimony, a habeas petitioner must prove that: "(1) . . . false testimony was introduced, (2) . . . that testimony either was or should have been known to the prosecution to be false, (3) . . . the testimony went uncorrected, and (4) . . . the false testimony was prejudicial in the sense defined by the Supreme Court in Agurs." Shih Wei Su v. Filion, 335 F.3d 119, 127 (2d Cir. 2003) (citing United States v. Agurs, 427 U.S. 97, 103 (1976)).

In Trubin's case, he provides no evidence that there was any uncorrected evidence that "was or should have been known" to the prosecutor to be false. The only evidence in the record reflects that Detective Noak had simply made a mistake in filling out the Miranda card. While Trubin has requested a hearing on this issue, see Letter from Andrew Trubin to Judge Gorenstein, filed Jan. 31, 2006 (Docket #19), no hearing is permissible because of Trubin's unexplained failure to develop any record on this point in the State courts. See 28 U.S.C. § 2254(e)(2).

## 2. Ineffective Assistance of Trial Counsel Claim

Trubin claims he was denied effective assistance of trial counsel because his counsel failed to object to the alleged perjured testimony of Detective Noak, having been assigned to Trubin's case shortly prior to trial. See Am. Petition at 3. Respondent argues that this claim is procedurally barred from habeas review. See Resp. Supp. Mem. at 6-7. Again, there is no need to reach the issue of whether this claim is procedurally barred because the claim must be denied on the merits.

To show ineffective assistance of counsel, a petitioner must satisfy both prongs of the two-part test articulated in Strickland v. Washington, 466 U.S. 668, 687-96 (1984). The

Strickland test has been characterized as "rigorous" and "highly demanding." Pavel v. Hollins, 261 F.3d 210, 216 (2d Cir. 2001) (internal quotation marks and citations omitted). To meet Strickland, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694; accord Rompilla v. Beard, 125 S. Ct. 2456, 2462 (2005); Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). In evaluating the first prong – whether counsel's performance fell below an objective standard of reasonableness – "'[j]udicial scrutiny . . . must be highly deferential'" and the petitioner must overcome the "'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" Bell v. Cone, 535 U.S. 685, 698 (2002) (alteration in original) (internal quotation marks omitted) (quoting Strickland, 466 U.S. at 689); see also Dunham, 313 F.3d at 730 (affording counsel a "strong presumption" of competence).

Here, there was no ineffective assistance because the underlying claim that counsel was supposed to have raised is itself meritless. See, e.g., United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) (counsel's "[f]ailure to make a meritless argument does not amount to ineffective assistance"); accord Muniz v. United States, 360 F. Supp. 2d 574, 580 (S.D.N.Y. 2005). Therefore habeas relief is not available on this claim.

### 3. Ineffective Assistance of Appellate Counsel Claim

In his coram nobis application, Trubin contended that his appellate counsel was ineffective for not contending that the admission of perjured testimony warranted a reversal of his conviction. See Coram Nobis Mem. ¶ 12. To obtain habeas relief on an ineffective

assistance of appellate counsel claim, a petitioner must satisfy the same two <u>Strickland</u>

requirements as in an ineffective assistance of trial counsel claim.  <u>See</u>, <u>e.g.</u>, <u>McKee v. United</u>

<u>States</u>, 167 F.3d 103, 106 (2d Cir. 1999).  Because appellate counsel cannot be found ineffective

for failing to raise a meritless claim, <u>see</u>, <u>e.g.</u>, <u>Aparicio v. Artuz</u>, 269 F.3d 78, 99 (2d Cir. 2001)

("The failure to include a meritless argument [on appeal] does not fall outside the 'wide range of

professionally competent assistance' to which Petitioner was entitled.") (quoting <u>Strickland</u>, 466

U.S. at 690), habeas relief is not available.

Conclusion

For the foregoing reasons, Trubin's petition should be denied.

**<u>PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION</u>**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have ten (10) days from service of this Report and Recommendation to file

any objections.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a), (e).  Such objections (and any responses to

objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Loretta A.

Preska and to the undersigned at 500 Pearl Street, New York, NY 10007.  Any request for an

extension of time to file objections must be directed to Judge Preska.  If a party fails to file

timely objections, that party will not be permitted to raise any objections to this Report and

Recommendation on appeal.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 144-45 (1985).

Dated: July 6, 2006
     New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Andrew Trubin
01-A-2556
Fishkill Correctional Facility
P.O. Box 1245
Beacon, NY 12508

Lisa Fleischmann
Assistant Attorney General
120 Broadway
New York, NY 10271

Hon. Loretta A. Preska
United States District Judge

assistance of appellate counsel claim, a petitioner must satisfy the same two <u>Strickland</u>

requirements as in an ineffective assistance of trial counsel claim. <u>See, e.g., McKee v. United</u>

<u>States</u>, 167 F.3d 103, 106 (2d Cir. 1999). Because appellate counsel cannot be found ineffective

for failing to raise a meritless claim, <u>see, e.g., Aparicio v. Artuz</u>, 269 F.3d 78, 99 (2d Cir. 2001)

("The failure to include a meritless argument [on appeal] does not fall outside the 'wide range of

professionally competent assistance' to which Petitioner was entitled.") (quoting <u>Strickland</u>, 466

U.S. at 690), habeas relief is not available.

## Conclusion

For the foregoing reasons, Trubin's petition should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have ten (10) days from service of this Report and Recommendation to file

any objections. <u>See also</u> Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to

objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Loretta A.

Preska and to the undersigned at 500 Pearl Street, New York, NY 10007. Any request for an

extension of time to file objections must be directed to Judge Preska. If a party fails to file

timely objections, that party will not be permitted to raise any objections to this Report and

Recommendation on appeal. <u>See Thomas v. Arn</u>, 474 U.S. 140, 144-45 (1985).

Dated: July 6, 2006
     New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

23
